## In re CAMERON SHOE CO.

(District Court, S. D. California, S. D. April 2, 1926.)

No. 7458–M.

Bankruptcy ⬅️229—Respondents, offering to refrain from bidding at trustee's sale on payment of sum, and on purchase by another bidder demanding additional sum under threat of making higher bid at confirmation hearing, held guilty of contempt of referee's order (Bankruptcy Act, § 41a [Comp. St. § 9625]).

Respondents, who offered to refrain from further bidding at a trustee's sale held under order of the referee, on payment of $100 by another bidder, and later, after he purchased the property, demanded $300, under threat of making a higher bid at the confirmation hearing, held guilty of contempt in resisting an order of the referee, under Bankruptcy Act, § 41a (Comp. St. § 9625).

In Bankruptcy. In the matter of the Cameron Shoe Company, bankrupt. Proceeding against Michael M. Weisz and others for contempt before referee. Respondents adjudged guilty.

Walter C. Durst and Leland J. Allen, of Los Angeles, Cal., for trustee.

Charles W. Ostrom, of Los Angeles, Cal., for respondents.

McCORMICK, District Judge. This is a proceeding in contempt in the above-styled bankruptcy matter, and is presented through the certificate of a referee in bankruptcy under section 41 of the National Bankrupt-

cy Law (Comp. St. § 9625). It appears from the referee's certificate that the respondents herein, Michael M. Weisz, M. S. Sugarman, and N. L. Scheinbaum attended a public auction sale which was regularly held by the trustee of the aforesaid bankrupt estate, pursuant to an order of the referee for the sale of property of the bankrupt estate, and that during such sale, and while bids were being made by those in attendance, Scheinbaum stated to one Edward F. Mills, who was bidding at such sale against others present, that if Mills would agree to pay to him (Scheinbaum) $100 Weisz, who was also bidding at such sale, would desist and refrain from making any further bid on the property of the bankrupt estate which was then and there being offered for sale at said auction.

The certificate further recites that at such auction property of the bankrupt estate had been sold to said Mills upon his bid subject to later confirmation by the referee upon the trustee's return of sale, and that immediately after the property was "knocked down" to Mills at the auction the three respondents, acting conjointly, offered Mills $300 for his accepted bid, and upon Mills' refusal to entertain or to accept such offer the three respondents demanded of Mills $300, and threatened that, if Mills refused to pay said sum of money to them, they would attend the hearing before the referee on the return of trustee's sale, and raise and increase the' bid of Mills, so as to either prevent Mills from obtaining the property or requiring him to pay more therefor than his successful and accepted bid at the auction sale, but, if Mills paid them $300 as demanded, they would refrain from attending the hearing before the referee upon the return of trustee's sale, and would refrain from making any further bids for the property "knocked down" to and sold to Mills at the auction.

The foregoing epitomizes the facts found by the referee and certified to the court, upon which the referee recommends and asks the court to adjudge the respondents in contempt, and that they be punished as for a contempt committed before the court of bankruptcy. With the certificate of the referee there were presented transcripts of testimony and evidence taken before the referee at several hearings upon an order requiring respondents to show cause before the referee why they should not be adjudged guilty of contempt on account of their acts and conduct as aforesaid.

At the hearing in this court, respondents appeared by counsel, and by agreement the

matter was submitted for decision upon the referee's certificate and the transcripts of testimony; the respondents having waived the right to present any further testimony or evidence herein.

I have examined the record, and believe that the referee's findings are justified. I think the referee's conclusion that the three men were acting conjointly to impede, resist, and interfere with the trustee in making a sale of the property of the bankrupt estate pursuant to the referee's order, is sustained by the record. By so doing the three respondents have committed a contempt of the referee's lawful order. It appears that the conjoint acts and conduct of respondents, not only constitute a contempt under section 41 of the act, but also amount to the commission of acts that constitute an indictable offense under subsection 5 of subdivision "b" of section 29 of the act, in attempting to extort money from Mills as a consideration for forbearing to bid and act in the proceedings on the return of trustee's sale to the referee. And in my opinion, if such conduct amounts to a substantive criminal offense it is also a contempt of court, as the gravamen of the offense is the interference with the orderly process of the court, and lies in the attempt to obstruct and impede a judicial proceeding before the referee by unlawful means.

The crux of the kind of an attempted extortion denounced by subsection 5 of subdivision "b" of section 29 of the act is not the mere attempting to obtain money from a person by coercive and extortionate means, but is the purpose and intent with which such coercion or extortion is attempted or accomplished, namely, to interfere with, obstruct, and affect the usual, regular, and orderly proceedings in bankruptcy matters. It is not so much a crime against property as it is an offense against the administration of justice in bankruptcy proceedings; and one who commits the acts denounced by this section of the National Bankruptcy Law is subject to punishment as for a contempt as well as for the commission of an indictable offense.

An illuminating and analogous case is found in Re Boyd (D. C.) 228 F. 1003, wherein Judge Sanford said: "After careful consideration, I have reached the following conclusions: Where a referee in bankruptcy proceedings has ordered the trustee to sell property of the bankrupt estate at private sale, the act of inducing a person who has bid upon the property to withdraw his bid before the sale is closed, for a secret consideration, in order that the property may be bid in at a lower price by another, is a resistance of a lawful order of the referee in proceedings before him, within the meaning of section 41 of the Bankruptcy Act, providing that: 'A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ.' The effect of the order of the referee is that the trustee shall sell the property to the highest bidder. The buying off of one bidder in order that the property shall not realize the highest price, but shall be bid in at a lower price by another, to the prejudice of the bankrupt estate, is an act which pro tanto defeats the order of the referee and frustrates its primary purpose of having the property sold to the highest bidder."

Likewise in the case at bar the conjoint attempt and effort of respondents to purchase the accepted bid of Mills for the secret and private consideration of $300, coupled with the offer of respondents to remain away from and not to bid at the confirmation proceedings if the $300 proposition was accepted by Mills, and the threat of respondents to be present and raise the Mills bid at the confirmation hearing if their $300 proposition was rejected by Mills, tended to accomplish the result of resisting the order of the referee that the trustee shall sell the property of the bankrupt estate to the highest bidder. The purpose of securing or attempting to secure payment to themselves of sums of money which might otherwise have been paid to the estate on the sale of the property thereof constituted nothing less than a conspiracy to interfere with the orderly administration and sale of bankruptcy estates, and was in effect an unlawful combination formed to resist a lawful order of the referee.

It follows that each of the respondents, being co-conspirators, have committed contempt within the meaning of the National Bankruptcy Law, and they are each adjudged to be guilty of such contempt, and each is fined in the sum of $150, and in default of the payment of such fines, respectively, within five days from entry of decision in this matter, commitments will issue for imprisonment in the county jail of the county of Los Angeles, state of California, of such of respondents who fail to pay such fine as imposed.